IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERICA PARKER,<br>          Plaintiff,<br><br>v.<br><br>SCHOOL DISTRICT OF PHILADELPHIA, doing business as "EDWARD T. STEEL ELEMENTARY SCHOOL,"<br>JAMAL B. DENNIS, Individually and in his Official Capacity as Principal of Edward T. Steel Elementary School, doing business as School District of Philadelphia,<br>STAFFING PLUS HOLDINGS, INC.,<br>ALLISON JOHNSTONE , doing business as "STAFFING PLUS HOLDINGS, INC.,"<br>INTERCOMMUNITY ACTION, INC.,<br>SHARON STARK, doing business as "INTERCOMMUNITY ACTION., INC.,"<br>URSULA WACYK,  doing business as "INTERCOMMUNITY ACTION., INC.,"<br>and JOHN DOES 1-10,<br>          Defendants. | CIVIL ACTION<br><br><br>NO.  17-1744 |

DuBois, J.                                                                                                                          October 12, 2018

**M E M O R A N D U M**

I.  **INTRODUCTION**

Plaintiff, Erica Parker, worked for Staffing Plus Holdings, Inc., as a lead clinician assigned to the Edward T. Steel Elementary School until October of 2015.  In her Second Amended Complaint, she alleges that defendants terminated her for reporting suspected child abuse and informing the Pennsylvania Department of Human Services of the failure of an employee of the School District of Philadelphia (the "District") to comply with mandatory reporting requirements.  Presently before the Court are separate Motions to Dismiss filed by the

District and Jamal B. Dennis ("Dennis"), and a third Motion to Dismiss filed by Staffing Plus Holdings, Inc., and Alison Clark (the "Staffing Plus Defendants").[1] For the reasons that follow, the District's Motion to Dismiss is denied, Dennis's Motion to Dismiss is denied, and the Staffing Plus Defendants' Motion to Dismiss is granted in part and denied in part.

## II. BACKGROUND

Plaintiff, Erica Parker, was employed by defendant Staffing Plus Holdings, Inc. ("Staffing Plus") as an independent contractor beginning in 2002. Sec. Am. Compl. ¶ 13. Staffing Plus is a corporation that provides healthcare staffing to various federal and state agencies. *Id.* ¶ 4. In 2015, Staffing Plus assigned plaintiff to work at defendant Intercommunity Action, Inc. ("Interact"), an agency which provides staffing for education services. *Id.* ¶ 6, 15. In turn, Interact assigned plaintiff to work as a lead clinician for the District at Edward T. Steel Elementary School ("Steel Elementary"). *Id.* ¶ 15.

On October 6, 2015, plaintiff responded to a classroom disruption and removed an elementary school student who was acting out in the classroom. *Id.* ¶ 19. The student told plaintiff that "on the prior day, he had reported to his school guidance counselor . . . , Ms. Jackson, that he and his neighbor had 'engaged in various sexual acts.'" *Id.* ¶ 21. The student also told plaintiff that his brother was gay and "had expressed a desire for him to be gay as well." *Id.* ¶ 22. When plaintiff asked if the student's brother had ever touched him inappropriately, the student became angry and refused to discuss the situation. *Id.* ¶ 22. After speaking with the student, plaintiff met with the guidance counselor to discuss the report. *Id.* ¶ 23. The guidance counselor told plaintiff that she informed the student's mother about the alleged sexual assault but took no further action. *Id.* ¶ 23. Plaintiff then reported the incident, and the guidance

---

[1] Alison Clark was formerly known as Alison Johnson and is incorrectly referred to as "Allison Johnstone" in plaintiff's Second Amended Complaint.

counselor's failure to report the incident, to her supervisor at Interact, Sharon Stark, and to Child Line, a Pennsylvania Department of Human Services telephone hotline to which professionals report child abuse. *Id.* ¶ 24. On October 7, 2015, Stark instructed plaintiff to report the incident, and the fact that plaintiff called Child Line, to the principal of Steel Elementary, defendant Dennis. *Id.* ¶ 26. On October 16, 2015, Alison Clark ("Clark"), plaintiff's supervisor at Staffing Plus, told plaintiff that her services were no longer needed at Steel Elementary. *Id.* ¶ 31. Several months later, in January 2016, Clark told plaintiff that Interact instructed Staffing Plus that the District would no longer retain plaintiff's services because of her report to Child Line. *Id.* ¶ 34.

Plaintiff filed this action on April 17, 2017, asserting wrongful termination, federal and state whistleblower claims, and intentional infliction of emotional distress. Plaintiff filed a First Amended Complaint on June 27, 2017, and a Second Amended Complaint on June 13, 2018. The Second Amended Complaint alleges in Count I that the District, Dennis, and the Staffing Plus Defendants, *inter alia*, violated her First Amendment rights under 42 U.S.C. § 1983 by retaliating against her for reporting both the alleged abuse and the District employee's failure to report the abuse. In Count II, plaintiff alleges a state law claim for wrongful termination by the Staffing Plus Defendants, Interact, and two Interact employees, Sharon Stark and Ursula Wacyk. Finally, in Count III, plaintiff alleges a *Monell* claim under 42 U.S.C. § 1983 against the District and Dennis.

Presently before the Court are three Motions to Dismiss: Defendant the School District of Philadelphia's Motion to Dismiss Plaintiff's Second Amended Complaint, filed on June 26, 2018; Defendant Jamal B. Dennis's Motion to Dismiss Plaintiff's Second Amended Complaint, filed on August 16, 2018; and Motion to Dismiss Second Amended Complaint by Defendants

3

Staffing Plus Holdings, Inc. and Alison Clark f/k/a Alison Johnson, filed on August 17, 2018. Plaintiff responded to all three motions, which are now ripe for the Court's consideration.

## III. APPLICABLE LAW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.*

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). However, a court may dismiss a claim with prejudice based on "bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).

## IV. DISCUSSION

The District, Dennis, and the Staffing Plus Defendants all argue that the Second Amended Complaint fails to allege any claims upon which relief can be granted, and seek dismissal under Rule 12(b)(6). The Court addresses each argument below.

4

### A. Plaintiff's Claims under 42 U.S.C. § 1983

In her Second Amended Complaint, in Count I, plaintiff asserts a claim for First Amendment retaliation under § 1983 against all defendants, and in Count III a § 1983 *Monell* claim against the District.[2]

42 U.S.C. § 1983 provides, in part, that

> [e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of a State or Territory. . . subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

This statute does not create substantive rights; rather, it provides a remedy for violations of rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege that a person acting under color of state law caused a deprivation of a right secured by the Constitution. *See Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

    i.    Plaintiff's *Monell* Claim

The liability of a municipality—in this case, the District—under 42 U.S.C. § 1983 is governed by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Under *Monell*, a municipality cannot be subjected to liability solely because its agents or employees caused injury to another person. *Id.* Rather, a municipal entity may be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" deprives a citizen of constitutional rights. *Id.* at 694. An official policy may be established under three circumstances: (1) the municipal entity adopted and promulgated a policy, the implementation of which caused the constitutional

---

[2] Although plaintiff's Second Amended Complaint asserts a *Monell* claim against both the District and Dennis, plaintiff withdrew the *Monell* claim against Dennis in her response. Thus, the *Monell* claim against Dennis will be marked withdrawn with prejudice. Pl. Resp. in Opp. to Dennis Mot. to Dismiss 14.

deprivation; (2) the policymaker failed to act affirmatively even though the need to take some action is obvious and the inadequacy of the existing practice is likely to result in the violation of constitutional rights; or (3) absent a formal policy, an official with policymaking authority violated federal law, causing the constitutional deprivation. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003).

In this case, the Second Amended Complaint, not artfully drawn, can be interpreted to raise all three theories of *Monell* liability discussed in *Natale*. 318 F.3d at 584. These arguments include (1) that the District adopted an official policy of terminating employees who reported suspected child abuse and/or who reported the District's failure to act on suspected abuse; (2) that the District failed to train its employees and, in doing so, acted with deliberate indifference to the constitutional rights of independent contractors; and (3) that federal law has been violated by an act of a District policymaker—in this case, the principal of Steel Elementary, Dennis.

First, plaintiff has not cited an official policy of the school promulgated by the District that could be the basis of a *Monell* claim under the first theory of liability identified in *Natale*. 318 F.3d at 584. Plaintiff only makes the conclusory assertion that:

> [d]efendants . . . developed and maintained policies, practices, procedures, and/or customs exhibiting deliberate indifference to the Constitutional rights of persons, which caused violations of Plaintiff's Constitutional and other rights. Specifically, [the] School District of Philadelphia and Jamal B. Dennis . . . terminate contracted employees and/or independent contractors who report child abuse to the appropriate authorities and/or . . . who identify other employee(s) of the School District of Philadelphia who fail to report child abuse to the appropriate authorities without any legal justification due to, *inter alia*, a failure to train, supervise, and/or discipline the School District of Philadelphia employees and . . . because of a deliberate indifference to the Constitutional rights of contracted employees.

Sec. Am. Compl. ¶ 52. Without factual allegations supporting plaintiff's claim that there was an adopted policy, the claim must be dismissed. *See Burke v. Twp. of Cheltenham*, 742 F. Supp. 2d

660, 675 (E.D. Pa. 2010) (finding that a plaintiff failed to sufficiently allege an official policy or custom where the complaint only contained "bald assertions that such policies or customs existed without any support that would suggest that what happened to [plaintiff] . . . were not idiosyncratic actions of individual public actors."). The Court thus concludes that the plaintiff has failed to allege the existence of an adopted policy sufficient to support *Monell* liability.

Next, plaintiff appears to raise a "failure to train" claim in support of *Monell* liability. Due to ambiguous phrasing in the Second Amended Complaint, it is unclear whether the plaintiff is arguing: (a) that the District failed to train its employees not to terminate contractors who report child abuse, or (b) that the District failed to train its employees to properly report child abuse as mandated by statute. Sec. Am. Compl. ¶ 38. Either way, plaintiff's allegations are conclusory and insufficient to state a successful failure to train claim.

In order to succeed on a failure to train claim, plaintiff must show (i) that the failure to train had a causal nexus to the constitutional violation and (ii) that the policymakers exhibited deliberate indifference in their failure to train employees. *Thomas v. Cumberland Cty.*, 749 F.3d 217, 226 (3d Cir. 2014).

First, if plaintiff argues that the District is liable under § 1983 for a failure to train employees not to terminate contractors "who report child abuse . . . and/or . . . who identify other employee(s) of the [District] who fail to report child abuse" her argument is deficient because such a failure to train does not raise an inference of deliberate indifference. Sec. Am. Compl. ¶ 38. Courts will not find deliberate indifference where "an employee's actions are patently inappropriate such that the proper course of action was apparent without training." *Hunter v. City of Phila.*, No. 15-2737, 2015 WL 7734158, at *4 (E.D. Pa. Dec. 1, 2015); *see also Kline ex rel. Arndt v. Mansfield*, 255 F. App'x 624, 630 (3d Cir. 2007). Retaliatory termination for an

7

independent contractor's compliance with statutorily mandated reporting of child abuse is "patently inappropriate." As a result, the District was under no obligation to train their employees not to engage in such conduct.

Second, even if plaintiff argues that the District failed to train their employees to report child abuse, plaintiff's claims are still insufficient because plaintiff has not established a causal nexus between the District's failure to train and her own termination. To establish a causal nexus "the identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 226 (3d Cir. 2014). "Liability cannot rest only on a showing that the employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury." *See Thomas*, 749 F.3d at 226. In this case, an alleged retaliatory termination was the cause of plaintiff's constitutional injury, not an employee's failure to report child abuse. It is true that training employees to report child abuse might have led the guidance counselor to report the suspected abuse in the first place, obviating the need for plaintiff to intervene. However, plaintiff cannot argue that she has established a causal nexus simply because a proper training program might have halted the first step in the sequence of events that ultimately led to her termination. Thus, plaintiff has not alleged a failure to train claim sufficient to support *Monell* liability.

Finally, to the extent that plaintiff's § 1983 claim is based on the act of an official policymaker, the Court concludes that plaintiff has sufficiently stated a claim. Plaintiff may establish that the District is liable under § 1983 by showing "a single act by a decisionmaker with final authority in the relevant area" such that the act "constitutes a 'policy' attributable to the municipality itself." *Board of Cty. Com'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404–

05 (1997); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–83 (1986) (holding a municipality liable for a county prosecutor's decision to order officers to forcibly enter petitioners clinic, violating the petitioner's Fourth Amendment rights). "If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it . . . represents an act of official government 'policy' as that term is commonly understood." *Pembaur*, 475 U.S. at 481. However, "municipal liability attaches only where the decionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481.

Plaintiff alleges that Dennis was the principal of and "chief decision maker" at Steele Elementary. Sec. Am. Compl. ¶ 3.[3] Plaintiff further alleges that she was informed by her supervisor at Staffing Plus that the District terminated her employment because she reported suspected child abuse, and the failure of the school to act on that child abuse, to Child Line. *Id.* ¶ 34.

Whether a particular official has final policymaking authority for the purposes of § 1983 liability is a question of state law. *Kelly v. Borough of Carlisle*, 622 F.3d 248, 264 (3d Cir. 2010). The Pennsylvania Code vests the authority to determine "whether a professional employe (sic) shall be dismissed" in "the superintendent of schools" or, if so directed by the superintendent, "a principal, who has supervision over the work of a professional employee or temporary employee." 24 Pa. Cons. Stat. § 11:1123(a), (h)(3) (2012). Accepting all reasonable inferences in favor of plaintiff, the Court concludes that plaintiff has sufficiently alleged that

---

[3] The District does not address whether Dennis possessed final decision-making authority with respect to plaintiff's termination.

Dennis was an officer who possessed final policymaking authority with respect to her termination.[4]

For the reasons stated above, plaintiff has sufficiently alleged a *Monell* claim against the District under § 1983.

### ii. Plaintiff's First Amendment Retaliation Claim

Plaintiff brings a claim for First Amendment retaliation under § 1983 against all defendants, including the District, Dennis, and the Staffing Plus Defendants. The District and defendant Dennis's Motions to Dismiss raise substantially the same arguments, so the Court addresses both motions together.

    a. The District and Dennis

To establish a First Amendment retaliation claim against an employer a plaintiff must allege that: (1) her speech is protected by the First Amendment, and (2) the speech was a substantial or motivating factor in the alleged retaliatory action. If both are proved, the burden shifts to the employer to establish that the same action would have been taken if the speech had not occurred. *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 986 (3d Cir. 2014). A public employee's speech is protected by the First Amendment if (1) the employee speaks as a citizen, not as an employee; (2) the speech involves a matter of public concern; and (3) the government lacks an adequate justification for treating the employee differently than the general public based on its needs as an employer. *Dougherty*, 772 F.3d at 987. The District and Dennis advance two arguments on this issue. First, they assert that First Amendment protections do not apply

---

[4] The Court notes that there is a distinction between a delegation of policymaking authority and a simple delegation of discretionary decision making. "Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988). Ultimately, for liability to attach, plaintiff will bear the burden of demonstrating that an individual with final policymaking authority violated her constitutional rights. *Smith v. Central Dauphin School Dist.*, No. 05-010003, 2007 WL 2262936, at *5 (M.D. Pa. Aug. 6, 2007).

because plaintiff made her report within the ordinary scope of her duties. Second, they argue that the First Amendment cannot protect plaintiff's speech because her report was not a matter of public concern. District Mot. to Dismiss 5-7; Dennis Mot. to Dismiss 5-7.

*1. Speech Within the Ordinary Scope of Duties*

The District and Dennis contend that plaintiff's speech is not protected by the First Amendment because plaintiff was required to file the abuse report under Pennsylvania's mandated child abuse reporting law. Pennsylvania law does require "school employee[s] [or] employee[s] of a child-care service who [have] direct contact with children in the course of employment" to report suspected child abuse. 23 Pa. Cons. Stat. § 6311(a). This reporting requirement, however, does not clearly extend to reports that the District mishandled the suspected child abuse.

A recent case in the Eastern District of Pennsylvania provides guidance. In *Reed-Seeger v. Sch. Dist. of Phila.*, plaintiff asserted that he was terminated in retaliation for filing a child abuse report in violation of the First Amendment. Defendant in that case sought to dismiss those claims, raising the same argument the District raises in this case. No. 14-cv-287, 2014 WL 7404133 (E.D. Pa. Dec. 30, 2014). The Court in *Reed-Seeger* relied on the Supreme Court decision in *Lane v. Franks*, which concluded that "the First Amendment protects a public employee who provides truthful sworn testimony, compelled by subpoena, outside the scope of his ordinary job responsibilities." *Id.* at *6 (quoting *Lane v. Franks*, 134 S. Ct. 2369, 2378 (2014)). That Court ultimately concluded that "[f]or defendants to be correct that [plaintiff's] filing of the report was not protected speech, then, the act of filing abuse reports must fall within the scope of a high school counselor's ordinary job responsibilities." *Id.* at *6. *Reed-Seeger* also held that whether the reporting requirements fell within or outside the scope of her ordinary

11

responsibilities was a mixed question of law and fact that could not be determined on a motion to dismiss. *Id.*

The Court agrees with the Court in *Reed-Seeger* and concludes that whether plaintiff was required to report suspected child abuse, and more specifically, the District's alleged failure to respond to the reported child abuse, in the course of her ordinary job responsibilities cannot be determined at this stage of the litigation.

2. *Speech on a Matter of Public Concern*

The District and Dennis further argue that plaintiff's report of suspected child abuse was not protected by the First Amendment because the report was not a "matter of public concern." Dist. Mot. to Dismiss 6; Dennis Mot. to Dismiss 6. They argue that plaintiff's complaint concerning the District employee's failure to report the suspected child abuse concerned "at most a single lapse by a colleague in her reporting obligations, not 'fundamental problems reaching beyond [her] day to day minutiae." Dist. Mot. to Dismiss. 6; Dennis Mot. to Dismiss 9.

The Court disagrees. A school's alleged mishandling of suspected child abuse is a matter of public concern. *See Holder v. City of Allentown*, 987 F.2d 188, 195 (3d Cir. 1993) (concluding that speech which "seeks to 'bring to light actual or potential wrongdoing or breach of public trust' on the part of government officials" addresses a matter of public concern) (citations omitted)). Although speech on a matter of public concern is often described as speech that relates to "broad social or policy issues" it also includes speech "implicat[ing] the discharge of public responsibilities" by a government office, agency or institution. *Borden v. Sch. Dist. of Twp. of E. Brunswick*, 523 F.3d 153, 170 (3d Cir. 2008). In this case, plaintiff's complaint regarding a District employee's failure to comply with mandatory child abuse reporting requirements constitutes speech on a matter of public concern.

For the reasons stated above, plaintiff has sufficiently alleged a First Amendment retaliation claim against the District and Dennis under § 1983.

   b.  The Staffing Plus Defendants

The Staffing Plus Defendants assert that Count I for First Amendment retaliation under § 1983 must be dismissed against them because plaintiff fails to adequately allege that Staffing Plus or Clark acted under the color of state law.[5]

A private party that deprives an individual of a constitutional right may be liable under § 1983 only when acting under color of state law. Courts will consider a party to be acting under color of state law where either: (1) the private entity was exercising powers traditionally within the exclusive prerogative of the state; (2) the private party acted with the aid of or in concert with state officials; or (3) there is a "sufficiently close nexus between the state and the challenged action of the [actor] so that the action may be fairly treated as that of the State itself." *Glunk v. Noone*, 186 F. Supp. 3d 453, 460 (E.D. Pa. 2016) (quoting *Kach v. Hose*, 589 F.3d 626, 646, 648 (3d Cir. 2009)); *see also Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995). Furthermore, "[t]he necessary 'close nexus' exists where the state exercises coercive power or provides 'such significant encouragement, either overt or covert,' deeming the conduct state action." *Glunk*, 186 F. Supp. 3d at 460.

Plaintiff avers that the Staffing Plus Defendants acted both in concert with the District and at the direction of the District. First, she asserts that the Staffing Plus Defendants conspired with officials at the School District to fire her in retaliation for exercising her First Amendment rights. Specifically, the Second Amended Complaint alleges that Stark, Wacyk, and Dennis, "and, upon information and belief, [Clark]," scheduled a meeting and that, during that meeting,

---

[5] Although Staffing Plus Defendants characterize plaintiff's claims as a § 1983 conspiracy, plaintiff argues more generally that the Staffing Plus Defendants participated in "joint activity" with the District. Pl. Resp. to Staffing Plus Defs. Mot. to Dismiss 15–17.

"agreed and conspired to terminate" plaintiff because she reported the suspected child abuse and the counselor's subsequent failure to respond according to her statutory duty. Sec. Am. Compl. ¶¶ 29, 30. Plaintiff further alleges that, following the meeting involving representatives from Interact, Staffing Plus, and Steel Elementary, Staffing Plus instructed plaintiff that her services were no longer necessary. *Id.* ¶ 31. Staffing Plus later told plaintiff that the School District instructed Interact to terminate plaintiff because she called Child Line. *Id.* ¶ 34.

A close nexus exists where the state compels the private actor's conduct through "'significant encouragement, either overt or covert, deeming the conduct state action.'" *Glunk*, 186 F.Supp.3d at 459 (citing *Am. Mfrs. Mut. Ins.Co. v. Sullivan*, 526 U.S. 40, 52 (1999)). Plaintiff not only asserts that the Staffing Plus Defendants were present at a meeting with the District regarding her termination, she also alleges that Interact instructed Staffing Plus to terminate plaintiff's employment on the grounds "that the School District of Philadelphia would no longer retain [p]laintiff's services because she made the phone call to Child Line." Sec. Am. Compl. ¶¶ 31, 34. In sum, plaintiff alleges that she was terminated by her employer at the specific instruction of the District.

The Court concludes that these allegations are sufficient, at this stage of the litigation, to state a claim for relief under § 1983 on the ground that the Staffing Plus Defendants acted under color of state law.

### B. **Plaintiff's Wrongful Termination Claim**

Finally, in her Second Amended Complaint, plaintiff brings a claim for wrongful termination against defendants including Staffing Plus and Alison Clark.

> i. Wrongful Termination by Clark

As an initial matter, the Staffing Plus Defendants argue that plaintiff failed to state a claim for wrongful termination against Clark because Clark "did not employ Ms. Parker." Staffing Plus Defs. Mot. to Dismiss 15. Defendants cite no case law to support this proposition and plaintiff does not respond to this argument.

Under Pennsylvania law it is unclear whether a wrongful termination claim can be asserted against a defendant, who was not the plaintiff's direct employer, in his or her individual capacity. *Medley v. SugarHouse HSP Gaming, L.P.*, No. 12-6284, 2013 WL 1157349, at *4 (E.D. Pa. Mar. 21, 2013). *Compare McGuire v. Palmerton Hosp.*, No. 12–1762, 2012 WL 5494924, at *5 (M.D. Pa. Nov.13, 2012) (holding that no wrongful termination claim exists against defendant in individual capacity), *and Hrosik v. Latrobe Steel Co.*, No. 94–1361, 1995 WL 456212, at *6 (W.D. Pa. Apr. 25, 1995) ("[a] wrongful discharge claim exists only against an employee's employer."), *with . . . DeMuro v. Phila. Housing Auth.*, No. 98–3137, 1998 WL 962103, at *5 (E.D.Pa. Dec.22, 1998) (permitting a wrongful termination claim against an individual to proceed, but dismissing the claim on other grounds).

When courts have found such a claim viable, they have only done so where the complaint alleged that the individual defendant was motivated by a personal interest falling outside the scope of their corporate duties. *See Medley*, 2013 WL 1157349, at *4 (discussing examples of conduct in a personal capacity including "the personal orchestration of a plaintiff's termination or personally asking a plaintiff to partake in a crime and then firing the plaintiff upon refusal").

Plaintiff's Second Amended Complaint refers to Clark as the "chief decision maker" of Staffing Plus concerning Steel Elementary. Sec. Am. Comp. ¶¶ 5, 14. However, nowhere in that complaint does plaintiff allege that Clark acted outside of her corporate capacity in terminating

15

plaintiff. Although plaintiff asserts that an unidentified individual at Staffing Plus mislead her regarding Clark's employment status and that Clark "conspired" against plaintiff and "covered up" the alleged conspiracy by blaming the District for plaintiff's termination, these allegations are insufficient to support an inference that Clark was motivated by personal interest in terminating plaintiff. Sec. Am. Compl. ¶¶ 5, 34.

Furthermore, neither plaintiff's original Civil Action Complaint nor her First Amended Civil Action Complaint adequately allege that Clark acted outside of her professional role as an employee of Staffing Plus Holdings, Inc. with regard to plaintiff's termination. *See* Compl. and First Am. Compl. (Document Nos. 1 & 18). In fact, plaintiff does not name Clark as a defendant in any capacity until her Second Amended Complaint. Because of plaintiff's repeated failure to allege that Clark acted in a personal capacity the Court concludes it would be futile to permit her to amend the complaint on these grounds. Accordingly, the wrongful termination claim against Clark is dismissed with prejudice.

    ii.    <u>Wrongful Termination by Staffing Plus Holdings Inc.</u>

The Staffing Plus Defendants argue that plaintiff's wrongful termination claim must be dismissed against Staffing Plus because Pennsylvania law does not permit wrongful discharge claims by independent contractors such as plaintiff. The Staffing Plus Defendants also argue that plaintiff has not set forth a cognizable violation of public policy as the basis of her wrongful termination claim.

Under Pennsylvania law, an at-will employee may be terminated "for good reason, bad reason, or no reason at all." *Hershberger v. Jersey Shore Steel Co.*, 575 A.2d 944, 946 (Pa. Super. Ct. 1990) (citations omitted)). "Nevertheless, an employer's privilege to dismiss an employee . . . may be qualified by the dictates of public policy." *Spyridakis v. Riesling Group,*

16

*Inc.*, No. 09-1545, 2009 WL 3209478, at *7 (E.D. Pa. Oct. 6, 2009) (quoting *Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009)). The public policy exception to at-will employment is construed narrowly. *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 111 (3d Cir. 2004). The three public policy exceptions applicable to the general rule that an at-will employee may be terminated without reason are set forth as follows:

> [A]n employer (1) cannot require an employee to commit a crime [and fire the employee for refusing to do so], (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when specifically prohibited from doing so by statute.

*Fraser*, 352 F.3d at 111 (quoting *Hennessy v. Santiago*, 708 A.2d 1269, 1273 (Pa. Super. Ct. 1998)).

Pennsylvania courts have not addressed the question whether an independent contractor—as opposed to an employee—may bring a claim for wrongful termination on the ground that an employer has violated public policy. *Id.* Absent guidance from Pennsylvania courts, the Third Circuit has assumed Pennsylvania courts will rule that the public policy cases apply equally to independent contractors and employees. *Id.*; *see also Spyridakis v. Riesling Group*, 398 F. App'x 793, 798 (3d Cir. 2010) (stating that the court will "assume . . . without deciding, that [independent contractor] could pursue a claim for wrongful discharge.")). Accordingly, the Court concludes that an independent contractor may bring a wrongful termination claim on the ground that her termination violated public policy.

Plaintiff also argues that she was terminated for making a statutorily required report of sexual abuse of a minor to the appropriate authorities. Pl.'s Resp. to Staffing Plus Defs.' Mot. to Dismiss 15–17. Pennsylvania law requires[6] "school employee[s] [or] employee[s] of a child-care service who [have] direct contact with children in the course of employment" to report

---

[6] Plaintiff does not cite the specific statutory provision which sets forth the mandating requirements, but all parties acknowledge that plaintiff had a statutory duty to report suspected child abuse.

suspected child abuse. 23 Pa. Cons. Stat. § 6311(a). Termination based on compliance falls squarely within the public policy exceptions under Pennsylvania law. *See Krolczyk v. Goddard Systems, Inc.*, 164 A.3d 521, 528 (Pa. Super. Ct. 2017) (plaintiffs stated a claim for wrongful discharge where they alleged that they were terminated for planning to report suspected child abuse).[7]

To the extent that the Staffing Plus Defendants argue that they did not "interfere" with plaintiff's statutory duty to report child abuse because she complied with her statutory duty prior to her termination, this argument is unsupportable. Staffing Plus Defs. Mot. to Dismiss 16. Pennsylvania courts have long recognized wrongful termination claims under the public policy exception where a plaintiff complied with a statutory duty and was subsequently terminated. *See Reuther v. Fowler & Williams, Inc.*, 386 A.2d 119, 255 Pa. Super. 28 (1978) (public policy violated where employer fired employee for serving on jury duty).

Accordingly, the Court concludes that plaintiff has stated a claim for wrongful termination under Pennsylvania law.

## V. CONCLUSION

For the foregoing reasons, the District's Motion to Dismiss is denied, Dennis's Motion to Dismiss is denied, and Staffing Plus Defendants' Motion to Dismiss is granted in part and denied in part. The Staffing Plus Defendants' Motion to Dismiss is granted as to plaintiff's wrongful termination claim alleged in Count Two against defendant Alison Clark, and denied in all other respects.

---

[7] Defendants attempt to characterize plaintiff's wrongful termination as a whistleblower claim, not recognized in the private sector under Pennsylvania law. Staffing Plus Defs. Mot. to Dismiss 17. In support of this argument defendants cite *Holowinski v. Children's Hosp. of Pittsburgh,* 649 A.2d 712, 715 (Pa. Super. 1994). In *Holowinski*, however, the court rejected the plaintiff's wrongful termination claim where the plaintiff identified "the need to protect whistle-blowers" as the public policy at issue. *Id.* The present case is distinguishable. In this case, plaintiff's claim is based on an established public policy exception, the mandated reporting of suspected child abuse. *See Krolczyk v. Goddard Systems, Inc.*, 164 A.3d 521, 528 (Pa. Super. Ct. 2017).

The claims that remain in this case are the claims for First Amendment retaliation under § 1983 in Count One against all defendants, the claim for wrongful termination in Count Two against Staffing Plus, Interact, Stark and Wacyk, and the *Monell* claim in Count Three against the District.

An appropriate Order follows.