IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERICA PARKER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SCHOOL DISTRICT OF | : | |
| PHILADELPHIA, et al. | : | NO. 17-1744 |

**MEMORANDUM ORDER**

THOMAS J. RUETER                                        November 21, 2019
United States Magistrate Judge

   Plaintiff, Erica Parker, brings this action pursuant to 42 U.S.C. § 1983 alleging

that defendants violated her First Amendment rights by retaliating against her after she reported

the suspected abuse of a minor child.  Plaintiff also asserts a state law claim for wrongful

termination.

   Presently before the court are the motions for summary judgment filed by: (1)

defendants Intercommunity Action, Inc. ("Interact"), Sharon Stark, and Ursala Wacyk

(collectively, the "Interact Defendants"), see Doc. 77; (2) defendants the School District of

Philadelphia ("SDP") and Jamal B. Dennis (collectively, the "SDP Defendants"), see Doc. 78;

and (3) defendants Staffing Plus Holdings, Inc. ("Staffing Plus") and Alison Clark[1] (collectively,

the "Staffing Plus Defendants"), see Docs. 79 and 80.[2]

---

[1] Defendant Alison Clark was formerly known as Alison Johnston.  See Doc. 79.  She is incorrectly referred to in the caption and Second Amended Complaint as Allison Johnstone.

[2] The Staffing Plus Defendants filed a second motion for summary judgment, alleging that plaintiff is judicially estopped from proceeding with this case because she failed to disclose her claims in this case in a bankruptcy case.  See Doc. 80.

The parties filed numerous documents in support of, and in response to, the motions for summary judgment.[3]  The court has considered all pleadings and documents submitted by the parties, including the exhibits appended to the parties' submissions.  For the reasons stated herein, the motions for summary judgment, Docs. 77, 78, and 79, will be **GRANTED**.[4]

## I.    FACTUAL BACKGROUND

Throughout her career, plaintiff has worked in various healthcare and counseling roles.  See Doc. 79, Exh. Parker-1 (plaintiff's resume).  Plaintiff was retained by Staffing Plus, a staffing corporation, as an independent contractor beginning in approximately 2000, and worked periodically over the years for varying periods of time and for various programs.  See Doc. 58 (hereinafter "Staffing Plus Answer") at ¶ 4; Doc. 79, Exh. Parker-13 (Staffing Plus Independent Contractor Agreement); Doc. 86, Exh. A (hereinafter "Pl.'s Dep.") at 20:24-22:23, 99:20-100:17, 220:12-222:23.  At times relevant to this case, Ms. Clark was employed by Staffing Plus as a recruiter and acted as plaintiff's recruiter.  (Staffing Plus Answer at ¶ 5; Pl.'s Dep at 64:7-8.)  In 2015, Staffing Plus provided orientation and training to plaintiff in a number of areas, including the reporting of suspected child abuse by mandatory reporters.[5]  See Doc. 79, Exh. Parker-2

---

[3]    Plaintiff filed a response to each motion.  See Docs. 83, 84, 85, 86.  Additionally, defendants filed reply briefs, see Docs. 87, 88, 89, 90, and plaintiff filed an omnibus sur-reply, see Doc. 93.

[4]    As set forth more fully infra, the Staffing Plus Defendants motion for summary judgment which raises the issue of judicial estoppel (Doc. 80), will be denied as moot.

[5]    Pursuant to Pennsylvania's Child Protective Services Law, 23 Pa. Cons. Stat. Ann. § 6301 et seq., certain individuals are considered mandatory reporters who must follow specific procedures for reporting suspected child abuse to Pennsylvania's Department of Human Services via electronic reporting, or a statewide toll-free telephone number.  ChildLine is the telephone service established by the Department of Human Services for this purpose.  See http://www.dhs.pa.gov/provider/childwelfareservices/childlineandabuseregistry/index.htm (last visited November 21, 2019).

(Independent Contractor Core Orientation Checklist); Doc. 79, Exh. Parker-3 (Plaintiff's Certificate of Completion for Core Orientation); Doc. 79, Exh. Parker-4 (Plaintiff's Certificate of Completion for Recognizing and Reporting Child Abuse); Pl.'s Dep at 23:12-24:22; 26:1-27:11). As an independent contractor working for Staffing Plus, plaintiff was a mandatory reporter and was responsible for reporting suspicions of child abuse.[6] (Pl.'s Dep. at 24:23-25:13.)

Interact provides School Therapeutic Services ("STS") to students in the School District of Philadelphia pursuant to a contract with Community Behavioral Health. (Doc. 51 (hereinafter "Interact Ans.") at ¶¶ 15, 16.) In 2015, plaintiff was referred to Interact by Staffing Plus to work as a Lead Clinician. (Interact Ans. at ¶ 15; Pl.'s Dep. at 28:15-22.) Plaintiff was first assigned by Interact to Blaine elementary school,[7] and then began working at Edward T. Steel Elementary School in September 2015. (Pl.'s Dep. at 29:4-8, 31:9-12, 132:10-18, 222:20-23, 235:5-8.)

While plaintiff was assigned to Steel, Mr. Dennis was the principal of the school and Ms. Stark, an Interact employee, worked as Clinical Coordinator in the STS program and supervised plaintiff. See Interact Ans. at ¶ 17; Doc. 77, Exh. 2 at ¶ 2 (hereinafter "Stark Decl."); Pl.'s Dep. at 151:11-23, 235:9-236:6.[8] Ms. Wacyk, an Interact employee, directed Interact's STS division. (Stark Decl. at ¶ 3.) Mr. Dennis did not supervise plaintiff while she worked at

---

[6]   The statutory definition of mandatory reporter includes independent contractors and individuals who work in schools. See 23 Pa. Cons. Stat. Ann. § 6311.

[7]   Plaintiff was assigned to Blaine for approximately four months. (Pl.'s Dep. at 234:23-34.) While plaintiff was assigned to Blaine, Mr. Dennis also worked at the school as vice-principal. (Pl.'s Dep. at 234:3-9.) Mr. Dennis did not supervise plaintiff at Blaine; she was supervised by an Interact employee who is not a party to this case. (Pl.'s Dep. at 234:14-22.)

[8]   While plaintiff was assigned to Steel, there were approximately eight other individuals who were supervised by Interact in similar capacities as plaintiff. (Pl.'s Dep. at 236:23-237:15.)

Steel. (Pl.'s Dep. at 236:7-12.) No one from Staffing Plus worked onsite at Steel as an administrator or supervisor. (Pl.'s Dep. at 152:8-17.)

On Monday, October 5, 2015, plaintiff was sent to a classroom along with the school guidance counselor to conduct an intervention of a student; this student had been suspended the prior week for inappropriately touching other students. (Pl.'s Dep. at 48:5-14, 53:7-54:1.) The following day, October 6, 2015, the student again acted out in class. (Pl.'s Dep. at 54:6-11.) Plaintiff was called to the classroom to speak with the student and learned information that she felt necessitated a report to ChildLine.[9] (Pl.'s Dep. at 54:7-8, 160:18-22, 161:11-16.) Plaintiff notified Ms. Stark of the situation. (Pl.'s Dep. at 54:13-15.) That evening, Ms. Stark left plaintiff a voicemail message advising plaintiff of the necessary procedures for reporting the suspicion of abuse. (Pl.'s Dep. at 54:20-55:1, 123:15-126:11.) Plaintiff made a report by calling ChildLine, including the information that the guidance counselor had not yet made a report, and completed an Interact incident report.[10] (Pl.'s Dep. at 56:24-57:4, 127:1-5.)

Plaintiff gave the incident report to Ms. Stark on October 7, 2015. (Pl.'s Dep. at 163:8-12.) That day, plaintiff, accompanied by Ms. Stark, informed Mr. Dennis that she had

---

[9] Plaintiff learned "disturbing" information about the student at issue prior to October 6, 2015, but she felt that the information she received did not rise to the level that she believed mandatory reporting was necessary at that time. (Pl.'s Dep. at 160:18-161:16.)

[10] The incident report reflects the following: Plaintiff was summoned to the classroom because a student was reported for inappropriate conduct. After leaving the classroom, the student engaged in a conversation with plaintiff at the guidance counselor's office during which he revealed, inter alia, that he had informed the guidance counselor the prior day that he had watched pornography on a computer with a neighbor. The student then requested to leave the guidance counselor's office and continued his conversation with plaintiff. At that point, the student divulged to plaintiff that he had engaged in sexual acts with the neighbor, and that his brother was gay and wanted him to be gay as well. Plaintiff then escorted the student to another office and reported the incident to Ms. Stark. On the morning of October 6, 2015, before plaintiff was called to the classroom to speak with the student, the guidance counselor had informed plaintiff that she attempted, unsuccessfully, to reach the student's mother the prior day, but she was able to speak with the mother that morning. See Doc. 78, Exh. C.

filed the ChildLine report and was dismissed from his office. (Pl.'s Dep. at 238:19-239:6, 251:8-15.) Ms. Stark then conducted a regularly scheduled meeting with Mr. Dennis. (Stark Decl. at ¶ 14.) On October 9, 2015, Ms. Stark left a voicemail message for plaintiff indicating that Ms. Stark was to meet with the principal that morning and sought clarification regarding what the guidance counselor had told plaintiff regarding the student on October 6. (Pl.'s Dep. at 71:18-72:15, 107:7-17.) Plaintiff worked at Steel on October 8 and 9, 2015, but did not work on Monday, October 12, 2015, as it was Columbus Day, a holiday for the School District of Philadelphia. (Pl.'s Dep. at 225:3-23.) On October 13, 14, and 15, 2015, plaintiff did not work because she was ill. (Pl.'s Dep. at 226:3-10.)

As a Lead Clinician, plaintiff was required to maintain certain documentation, including DAP notes, which documented an individual student's daily progress, quarterly treatment plans, and SALs, which were essentially timesheets. (Pl.'s Dep. at 29:13-30:10, 150:9-24, 152:18-154:4, 154:9-158:1.) While assigned to Steel, plaintiff submitted this paperwork to her supervisor, Ms. Stark. (Pl.'s Dep. at 150:20-151:12, 153:23-154:6, 158:2-13.) Plaintiff acknowledged that her paperwork contained errors. (Pl.'s Dep. at 49:1-10.) Plaintiff also acknowledged that she had difficulty managing her caseload while at Steel. (Pl.'s Dep. at 50:12-51:16.) After plaintiff made the report to ChildLine, she continued to have issues with her time management and paperwork. (Stark Decl. at ¶ 17.) Plaintiff sent an email to Ms. Wacyk dated October 13, 2015, in which she requested a meeting to discuss the difficulty she was having completing her required paperwork in a timely manner. (Pl.'s Dep. at 39:7-40:17.) On or around October 14, 2015, Ms. Stark became convinced that the deficiencies in plaintiff's work required that plaintiff be removed from her assignment at Steel. See Stark Decl. at ¶¶ 18-19; Doc. 77, Exh. 4 (Stark October 14, 2015 Email); Doc. 78, Exh. H (Stark 2016 Letter). Plaintiff was

informed by Ms. Stark via text message not to report to work at Steel on October 16, 2019. (Doc. 86, Exh. C.)  On October 15 or 16, 2015, plaintiff spoke with Ms. Clark who also informed plaintiff to no longer report to Steel.  (Pl.'s Dep. at 171:11-172:1.)  After leaving Steel in October 2015, plaintiff worked at a daycare center for several months.  (Pl.'s Dep. at 200:24-201:23.)

In January 2016, plaintiff exchanged email correspondence with Kate Call, an employee of Staffing Plus who had the title of Senior Compliance Representative, regarding plaintiff's certifications and clearances.  (Pl.'s Dep. at 133:7-134:15, 270:15-271:2.)  Plaintiff recorded a voice memo to herself on August 31, 2016, in which she memorialized that she had stopped by the Staffing Plus offices regarding her certifications and was informed by a woman there that she had been "let go back in January 2016."  (Pl.'s Dep. at 177:13-180:12, 184:16-186:10.)

Plaintiff presently contends that Mr. Dennis, Ms. Stark, Ms. Wacyk, and Ms. Clark "agreed and conspired to terminate plaintiff due to her statutorily-required report [of suspected child abuse], specifically because plaintiff reported all information, including the fact that [the guidance counselor][11] failed to inform the appropriate authorities."  (Doc. 33, Pl.'s Sec. Am. Compl. at ¶ 30.)

## II.    PROCEDURAL HISTORY

Plaintiff filed this action on April 17, 2017, asserting claims of wrongful termination, federal and state whistleblower claims, and intentional infliction of emotional

---

[11]     In plaintiff's Second Amended Complaint, plaintiff refers to the guidance counselor as "Ms. Jackson."  See Doc. 33 at ¶ 30.  In the Statement of Undisputed Facts offered in support of their motion for summary judgment, the SDP Defendants aver that "no guidance counselor by the name of Ms. Jackson worked at Steel Elementary at the time, and Parker cannot recall any other name.  Parker Dep. at 241:13-18."  (Doc. 78 at ¶ 10.)

distress.  (Doc. 1.)  Plaintiff then filed a First Amended Complaint on June 27, 2017, <u>see</u> Doc.

18, and a Second Amended Complaint on June 13, 2018, <u>see</u> Doc. 33.  Defendants SDP, Mr.

Dennis, Staffing Plus, and Ms. Clark filed motions to dismiss.  <u>See</u> Doc. 34, 44, 45.  In a

decision dated October 15, 2018, the Honorable Jan E. DuBois denied the motions as to

defendants SDP, Mr. Dennis and Staffing Plus, but granted the motion to dismiss with respect to

the wrongful termination claim against Ms. Clark.  <u>See</u> <u>Parker v. Sch. Dist. of Philadelphia</u>, 346

F. Supp. 3d 738, 745 n.2 (E.D. Pa. 2018).

On July 9, 2019, the parties consented to jurisdiction before the undersigned and

the case was referred for trial.  (Docs. 71, 72.)  At plaintiff's request, the court granted an

extension of the discovery deadline.  (Docs. 74, 75.)  Defendants then filed the motions for

summary judgment that are presently before the court, asserting that summary judgment should

be entered in their favor on all claims brought against them.  (Docs. 77, 78, 79, 80.)

In her responses to the motions for summary judgment, plaintiff withdrew several

of her claims.  That is, plaintiff voluntarily withdrew the wrongful termination claim presented in

Count II against Ms. Stark and Ms. Wacyk.  <u>See</u> Doc. 86 at 22.  Additionally, plaintiff has

voluntarily withdrawn Count III of the Second Amended Complaint against defendant SDP

which presented a claim pursuant to <u>Monell v. Dep't of Soc. Servs. of New York</u>, 436 U.S. 658,

690 (1978).  <u>See</u> Doc. 85 at 9.[12]

---

[12]     In deciding the motions to dismiss, the court noted that although plaintiff asserted a
<u>Monell</u> claim in Count III of the Second Amended Complaint against defendants SDP and Mr.
Dennis, in her response to the motion to dismiss, plaintiff withdrew the <u>Monell</u> claim against Mr.
Dennis and this claim was marked as withdrawn with prejudice.  <u>See</u> <u>Parker</u>, 346 F. Supp. 3d at
745 n.2.

Therefore, the claims that remain before the court are: the claim for First Amendment retaliation under § 1983 in Count I alleged against all defendants, and the claim for wrongful termination in Count II presented against defendants Staffing Plus and Interact.

## III.    STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material when "it might affect the outcome of the suit under governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). There is no genuine issue as to any material fact if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322-23. "[T]he burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

To defeat summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The non-moving party must oppose the motion and, in doing so, may not rest upon the mere allegations or denials of [her] pleadings. [Her] response . . . must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice." D.E. v.

Cent. Dauphin Sch. Dist., 765 F.3d 260, 268-69 (3d Cir. 2014) (internal citations and quotations omitted); Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) (the party adverse to summary judgment cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions). A mere "scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

In considering a motion for summary judgment, the evidence must be considered in the light most favorable to the non-moving party, and all inferences must be drawn in that party's favor. Celotex Corp., 477 U.S. at 322. However, if "the evidence [offered by the non-moving party] is merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

## IV.  DISCUSSION

### A.  Count I - First Amendment Retaliation

In Count I of the Second Amended Complaint, plaintiff asserts that her First Amendment rights were violated when defendants retaliated against her by terminating her employment after she reported a suspicion of child abuse to ChildLine. Plaintiff's Count I claim, presented against all defendants, fails for several reasons.

To establish any claim under § 1983, a plaintiff must demonstrate that: (1) the conduct at issue was committed by a person acting under the color of state law, and (2) the complained-of conduct deprived the plaintiff of rights secured under the Constitution or federal law. Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 752 (3d Cir. 2019) (citing Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the

operation of <u>respondeat superior</u>." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207-08 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Id.</u> at 1207.

1.    **State Actors**

Defendants Interact, Ms. Stark, Ms. Wacyk, Staffing Plus, and Ms. Clark each asserted in their motions for summary judgment that they are not state actors, and therefore, cannot be liable on plaintiff's First Amendment claim. <u>See</u> Doc. 77 at 8-10 and Doc. 79 at 4-7. Defendants' respective state actor arguments are compelling.

To determine whether state action exists, the court must consider: "(1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." <u>Borrell v. Bloomsburg Univ.</u>, 870 F.3d 154, 160 (3d Cir. 2017) (internal citations and quotations omitted), <u>cert. denied sub nom.</u> <u>Borrell v. Richer</u>, 138 S. Ct. 2028 (2018). Plaintiff claims that defendants Interact, Ms. Stark, Ms. Wacyk, Staffing Plus, and Ms. Clark are state actors because each was a "willful participant in Plaintiff's removal with a state actor, Defendant, Dennis." (Doc. 84 at 6-8; Doc. 86 at 7).

Viewing the evidence in a light most favorable to plaintiff, the record simply does not establish that Mr. Dennis made the decision to remove plaintiff from Steel. Rather, Ms. Stark's July 25, 2019 declaration reflects that she made the determination to remove plaintiff from Steel due to deficiencies in plaintiff's work. <u>See</u> Stark Decl. at ¶¶ 18-20. This is supported by the October 14, 2015, email from Ms. Stark to Ms. Wacyk that reflects the same, <u>see</u> Doc. 77,

Exh. 4, as does an October 14, 2016 letter authored by Ms. Stark, see Doc. 78, Exh. H. In addition, Mr. Dennis has represented that he did not know the reason plaintiff was removed from Steel. (Doc. 78, Exh. E at ¶¶ 5-6.) Moreover, plaintiff acknowledged at her deposition that no one from Staffing Plus or Interact told plaintiff that Mr. Dennis directed them not to bring plaintiff back to Steel. (Pl.'s Dep. at 240:19-241:7.) Plaintiff's assertion that Mr. Dennis instructed other defendants to remove plaintiff from Steel is pure conjecture.

In addition, the evidence does not support that there was some agreement amongst all defendants to remove plaintiff from Steel because she contacted ChildLine, including the information that the guidance counselor had not contacted ChildLine. At her deposition, plaintiff testified that she believes there was a conspiracy among defendants to retaliate against her for the call to ChildLine. (Pl.'s Dep. at 241:19-243:2.) Plaintiff offers as evidence the fact that plaintiff was escorted to Mr. Dennis' office and was instructed to tell Mr. Dennis that she was the individual who contacted ChildLine, and that Ms. Stark then met with Mr. Dennis. (Pl.'s Dep. at 242:16-23, 251:98-15.)[13] Plaintiff also points to an October 9, 2015 voicemail in which Ms.

---

[13]       In her responses to the motions for summary judgment, plaintiff posits that Mr. Dennis, "upon learning that Plaintiff was the individual who made the ChildLine Report, told Plaintiff to her face, 'okay you are done!' See Exhibit A, 239:1-239:6; 250:23-251:7." See, e.g., Doc. 86 at 8. Plaintiff further avers that "Defendant, Dennis' startling statement to Plaintiff that she 'was done', coupled with his immediate meeting thereafter with Moving Defendant, Stark – the individual who 'takes responsibility' for Plaintiff's termination – is sufficient for a jury to find a 'meeting of the minds' occurred on October 8, 2015 to ensure Plaintiff 'was done' at Steel Elementary." Id. However, the deposition transcript reflects that plaintiff was asked to relate her October 7, 2015 conversation with Mr. Dennis and stated:

| | |
|---|---|
| Plaintiff: | I told him that I filed the – I filed the report. |
| Counsel: | What else did you tell him? |
| Plaintiff: | That's what I remember, just telling him that I'm the one who filed the report. That's what I remember. |
| Counsel: | After you told him that you filed the report, according to your Complaint, he simply said okay and dismissed you. Is that accurate? |
| Plaintiff: | From the – I went to his office and I was dismissed, yeah. |

Stark indicated that she was going to meet with Mr. Dennis regarding the incident. (Pl.'s Dep. at 242:24-243-2.) However, plaintiff acknowledged that she did not know what Ms. Stark and Mr. Dennis said in this meeting. (Pl.'s Dep. at 251:17-252:7.) In contrast, Ms. Stark has represented that she and Mr. Dennis did not discuss "whether plaintiff should be removed due to her ChildLine report or reporting that the guidance counselor failed to disclose the suspected abuse." (Stark Decl. at ¶ 16.) Moreover, Mr. Dennis represented in his answers to interrogatories that he "had weekly or biweekly conversations with [Ms.] Stark regarding students that were being serviced by [plaintiff] and other Intercommunity representatives. Those conversations did not involve [plaintiff's] performance." (Doc. 78, Exh. E. at ¶¶ 11-12.) Thus, the evidence shows that Ms. Stark and Ms. Dennis met on October 7 and 9, 2015, but does not establish that they discussed the removal of plaintiff from Steel during those meetings, and certainly does not establish that they discussed the removal of plaintiff from Steel for the reasons that she alleges.

The evidence in no way establishes that Ms. Stark and Mr. Dennis agreed to remove plaintiff from Steel because she made a report to ChildLine. Plaintiff's theory that defendants Interact, Ms. Stark, Ms. Wacyk, Staffing Plus, and Ms. Clark are state actors because

---

(Pl.'s Dep. at 238:19-239:6.) Plaintiff again was asked to relay her October 7, 2015 conversation with Mr. Dennis and recounted the conversation as follows:

> Counsel: And so the question was posed – and I'm not sure it was really answered – was, what is the basis of your belief that there was these conspiratorial meetings that occurred which led to the end of the assignment?
> Plaintiff: As I stated, the first thing that happened to me is that I was escorted again to – I don't know what it is about to the office. But I was escorted again to the office, this time by Sharon Stark, who said you need to – and it was Ursula told me you need to tell Mr. Jamal Bryant [sic] that you are the one that filed the Complaint to ChildLine. And then after I told him, you know, then, okay, I was told, okay, you are done. And then they went into a meeting.

(Pl.'s Dep. at 250:17-251:10.)

each was a "willful participant in Plaintiff's removal with a state actor, Defendant, Dennis" finds no support in the record other than plaintiff's conclusory allegations in her deposition. That is, plaintiff only offers unsupported evidence – her own deposition testimony and her responses to interrogatories. See, e.g., Doc. 86, Exhs. A, B. The record on summary judgment is devoid of any facts supporting plaintiff's claim that Mr. Dennis was involved in the decision to remove plaintiff from Steel, or that defendants acted in agreement to do so. "[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment." Thomas v. Delaware State Univ., 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) (citing N.L.R.B. v. FES, (a Div. of Thermo Power), 301 F.3d 83, 95 (3d Cir. 2002)) ("Roche's testimony . . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment.") and Arrington v. United States, 473 F.3d 329, 343 (D.C. Cir. 2006) ("[S]ummary judgment is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined . . . by other credible evidence. . . ." (internal quotations and emphasis omitted)). See Owens v. Coleman, 629 F. App'x 163, 168 (3d Cir. 2015) (not precedential) ("A party resisting a [summary judgment] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions.") (citing Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)).

2. **Whether Plaintiff Engaged in Constitutionally Protected Conduct**

Assuming arguendo that plaintiff has demonstrated that defendants are state actors, to establish a First Amendment retaliation claim, plaintiff must prove that "(1) [s]he engaged in 'constitutionally protected conduct,' (2) the defendant engaged in 'retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights,' and (3)

'a causal link [existed] between the constitutionally protected conduct and the retaliatory action.'" Palardy v. Twp. of Millburn, 906 F.3d 76, 81 (3d Cir. 2018), cert. denied sub nom. Twp. of Millburn N.J. v. Palardy, 139 S. Ct. 2011 (2019). "If a plaintiff satisfies these elements, the government may avoid liability if it can show by a preponderance of the evidence that it would have taken the adverse action even in the absence of the protected conduct." Baloga, 927 F.3d at 752 (internal citations and quotations omitted).

 The Third Circuit recently explained the constraints that a public employee faces when presenting a First Amendment retaliation claim as follows:

> Not all First Amendment activity is constitutionally protected in the public workplace. "When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." [Garcetti v. Ceballos, 547 U.S. 410, 418 (2006) (citation omitted)]. Insofar as workplace speech is concerned, the Supreme Court has long held that public employees only receive First Amendment protection from retaliation in the workplace when they speak out on a matter of public concern and their interest in speaking outweighs the government's interest in promoting workplace efficiency and avoiding disruption. See Connick v. Myers, 461 U.S. 138, 147, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983); Pickering v. Bd. of Educ., 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L.Ed.2d 811 (1968). In Garcetti, the Court added a further wrinkle to its workplace speech jurisprudence, holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 547 U.S. at 421, 126 S. Ct. 1951. Following Garcetti, then, "[a] public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public.'" Hill v. Borough of Kutztown, 455 F.3d 225, 241-42 (3d Cir. 2006) (quoting Garcetti, 547 U.S. at 418, 126 S. Ct. 1951).

Palardy, 906 F.3d at 81. The first prong of this three-part test, whether plaintiff spoke as an employee or as a citizen when she made the suspicion of abuse report to ChildLine, is of particular import to the case at bar.

In Lane v. Franks, 573 U.S. 228, 240 (2014), the Supreme Court stated that "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee – rather than citizen – speech." The Court explained that the "critical question" is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." Id. Third Circuit case law following this Supreme Court precedent has "focused its inquiry on whether a public employee's speech was informed by or the result of his or her primary job duties." Javitz v. Cnty. of Luzerne, 940 F.3d 858, 864 (3d Cir. 2019). A court must "make a practical inquiry and assess whether the speech at issue is itself ordinarily within the scope of an employee's duties." De Ritis v. McGarrigle, 861 F.3d 444, 453 (3d Cir. 2017) (internal citations and quotations omitted). See Flora v. Cty. of Luzerne, 776 F.3d 169, 179 (3d Cir. 2015) ("[T]he responsibility of a district court in evaluating whether a public employee's speech was made as a private citizen is to ask whether the speech at issue was outside the scope of his ordinary job responsibilities.") (internal citation omitted). The Third Circuit has reasoned that "[w]hether a person speaks as a citizen depends less on the subject matter -- though that is relevant -- than on the manner of speech, specifically whether the plaintiff is 'expected, pursuant to [his or her] job duties,' to make the speech that is at issue." Jerri v. Harran, 625 F. App'x 574, 580 (3d Cir. 2015) (not precedential) (citing Foraker v. Chaffinch, 501 F.3d 231, 241 (3d Cir. 2007), abrogated on other grounds by Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379 (2011)). In Javitz, the Third Circuit recently explained that in analyzing the citizen speech issue, it considered who the plaintiff spoke to, what she spoke about, and why she spoke, to determine

whether the speech fell outside the scope of the plaintiff's primary job duties. 940 F.3d at 865-66.[14]

Applying these standards to the present case, it is clear that plaintiff spoke as an employee and not as a citizen when making the report of suspected abuse; therefore, her speech was not protected by the First Amendment.

The speech here consists of the report that plaintiff made to ChildLine, relaying the information known to her at the time, including that the guidance counselor had not yet made a report of suspected abuse. As mentioned supra, ChildLine is the state-wide toll-free telephone number established by the Department of Human Services for the purpose of reporting suspicions of child abuse. The statute also provides that when a person is required to report a suspicion of abuse as a school staff member, the mandatory reporter must make the report to the

---

[14]    In support of her argument that she did not speak as an employee when she made the report to ChildLine, plaintiff directs the court's attention to Reilly v. City of Atlantic City, 532 F.3d 216 (3d Cir. 2008), cert. denied, 555 U.S. 1170 (2009), and urges the court to find that plaintiff's speech was citizen speech because plaintiff "reported the child abuse and felonious actions as any law-abiding citizen would do." See, e.g., Doc. 86 at 10. In Reilly, however, the speech at issue was a police officer's testimony at trial. The court found that the plaintiff there had an independent obligation as a citizen to testify truthfully in court, rendering the speech citizen speech. See Reilly, 532 F.3d at 231. The court in Southerton v. Borough of Honesdale, recently provided a succinct explanation of this analysis:

> [I]f a public employee testifies in court, he speaks as a citizen because under Reilly he has an "independent obligation as a citizen to testify truthfully," which categorically satisfies Garcetti's duty inquiry, 532 F.3d at 231; but if a public employee testifies elsewhere, such as in a grievance arbitration, Lane applies and [the court] must independently consider if that testimony falls within the employee's ordinary job duties. The reason for drawing the line at the courthouse door is Reilly's emphasis on the protection of "the integrity of the judicial process," the societal truth-seeking function of courtroom proceedings like grand jury investigations and criminal trials, and the fact that courtroom testimony "is bound by the dictates of the court and the rules of evidence."

2018 WL 5810269, at *5 (M.D. Pa. Nov. 6, 2018) (emphasis in original) (citing Reilly, 532 F.3d at 228-29, 231). Thus, plaintiff's focus on Reilly is misplaced. Here, all citizens do not have a statutory obligation to report under Pennsylvania's child abuse reporting statute. Instead, Lane, which postdates Reilly, clarifies that the appropriate inquiry in the case at bar is whether the speech at issue is ordinarily within the scope of plaintiff's duties.

Department of Human Services, but also "shall immediately thereafter notify the person in charge of the . . . school. . . ."  See 23 Pa. Cons. Stat. Ann. § 6311(c).  In accordance with these statutory procedures, plaintiff contacted ChildLine and then informed Ms. Stark and Mr. Dennis of the suspected abuse and that she had made a report through ChildLine.  Thus, because of her work as a Lead Clinician, plaintiff was required pursuant to statute to direct the report to the Department of Human Services and to Mr. Dennis.  Consideration of this factor points to employee speech.  See Scrip v. Seneca, 651 F. App'x 107, 110 (3d Cir. 2016) (not precedential) ("[T]he audience of [the] speech is an important consideration in determining whether speech is 'official' or 'citizen' speech."), cert denied, 137 S. Ct. 1095 (2017); see also Fraternal Order of Police, Lodge 1 v. City of Camden, 842 F.3d 231, 244 (3d Cir. 2016) (finding that plaintiff-officers were not speaking as citizens when they completed internal police counseling forms as part of the police disciplinary process because citizens do not complete internal police counseling forms the completion of such forms fell under the officers' official duties).  Compare Garcetti, 547 U.S. at 421 (holding that speech was official when the plaintiff "spoke as a prosecutor fulfilling a responsibility to advise his supervisor"), with Pickering v. Bd. of Ed., 391 U.S. 563, 569-70 (1968) (holding that a letter to a newspaper was citizen speech in part because it was "in no way directed towards any person with whom appellant would normally be in contact in the course of his daily work as a teacher").

        In addition, the subject of plaintiff's speech, a suspicion of child abuse report, was within plaintiff's ordinary job duties and thus also points to employee speech.  It was anticipated even before plaintiff began working at Steel that in her role as a Lead Clinician, she may be required to report a suspicion of child abuse.  Evidence supplied by defendant Staffing Plus demonstrates that plaintiff executed a Staffing Plus Independent Contractor Core

Orientation Checklist on February 2, 2015, confirming that as an independent contractor she would be "held accountable for knowing and following the information" listed on the checklist. See Doc. 79, Exh. Parker-2. The section entitled "Legal Responsibilities" includes the item "Suspected abuse and role as mandatory reporter." Id. Indeed, plaintiff received training from Staffing Plus in February 2015, and again in June 2015, on how to recognize and report child abuse. See Doc. 79, Exhs. Parker-3, Parker-4. Thus, plaintiff's report to ChildLine was "part and parcel of [her] ordinary job duties." See De Ritis, 861 F.3d at 454 (finding that assistant public defender's in-court statements to attorneys and judges were made while waiting for a proceeding on the record to begin or end "and thus were part and parcel of his ordinary job duties"); McAndrew v. Bucks Cty. Bd. of Comm'rs, 183 F. Supp. 3d 713, 732-34 (E.D. Pa. 2016) (finding testimony at disciplinary hearing was employee speech when plaintiff's own deposition testimony revealed that he believed he was "on the clock" when he testified at disciplinary hearing). Cf. Flora, 776 F.3d at 180 (finding that the ordinary job duties of the plaintiff, as a public defender, did not include the public reporting of lingering effects from government corruption or the filing of a class action suit to compel adequate funding for his office, because plaintiff's job duties required plaintiff to represent indigent clients in criminal court and related proceedings); Dougherty v. Sch. Dist. of Philadelphia, 772 F.3d 979, 988, 990 (3d Cir. 2014) (finding that because the School District employee's "routine job responsibilities" did not include reporting misconduct to the press or to the school board, his speech was not within the scope of his employment "merely because the subject matter of the speech concern[ed] or relate[d] to those duties.").

Moreover, plaintiff made the ChildLine report because she was obligated to do so by statute. In contrast, in Javitz, the court found that the employee's report of wrongdoing was

not a formal job duty or responsibility such that the speech did not constitute citizen speech. 940 F.3d at 866. The Javitz court noted that an ethics code that encouraged the reporting of wrongdoing did not bring the speech into the realm of the plaintiff's official duties. Id. The court noted that "nowhere in her job duties was she instructed to report crimes." Id. Here, plaintiff made the report to ChildLine because her job as a Lead Clinician rendered her a mandated reporter, requiring plaintiff to contact the Department of Human Services when she had reasonable cause to believe that a child was the victim of child abuse. See 23 Pa. Cons. Stat. Ann. § 6311(b)(1). Once she obtained the information that formed the reasonable cause to suspect that the student was the victim of child abuse, plaintiff was required to contact the Department to make the report. Plaintiff had a statutory duty to do so as a result of her job with the school. The fact that plaintiff chose to include the information that the guidance counselor had not yet reported the situation to the Department of Human Services does not alter the analysis. Although plaintiff suggests that it was somehow improper for Ms. Stark to instruct plaintiff to explain to Mr. Dennis that she made the report, as noted supra, plaintiff was required by statute to inform the school that she made the report. See 23 Pa. Cons. Stat. Ann. § 6311(c) ("Whenever a person is required to report . . . in the capacity as a member of the staff of . . . school, . . . that person shall report immediately in accordance with section 6313 and shall immediately thereafter notify the person in charge of the . . . school . . . .").[15] The incidence of

---

[15]     Additionally, the Third Circuit has "consistently held that complaints up the chain of command about issues related to an employee's workplace duties . . . are within an employee's official duties" and therefore not made as a citizen. Morris v. Philadelphia Hous. Auth., 487 F. App'x 37, 39 (3d Cir. 2012) (not precedential). See Foraker, 501 F.3d at 241-43 (holding that police officers' statements concerning hazardous conditions at a firing range were made pursuant to their official duties because they were obligated to report that type of information up the chain of command). See also Santiago v. New York & New Jersey Port Auth., 687 F. App'x 146, 152 (3d Cir. 2017) (not precedential) (holding that plaintiff was not speaking as a citizen when she delivered to the chain of command a handwritten report regarding a safety incident involving another employee); Caplin v. Lackawanna Cnty., 2018 WL 2215971, at *7-8 (M.D. Pa. May 15,

19

speech at issue here is the report to ChildLine, not the discussion with Mr. Dennis. Plaintiff placed the call to ChildLine because she was required pursuant to her primary job duties.

Thus, the "to whom," "what," and "why" of plaintiff's speech clearly demonstrates that plaintiff spoke as an employee when she made the report to ChildLine. In other words, defendants have presented evidence that demonstrates that plaintiff was expected pursuant to her job duties to make the speech at issue. See Jerri, 625 F. App'x at 580 (considering whether the plaintiff was expected, pursuant to his job duties, to make the speech at issue). In addition, the filing of child abuse report was part of the work that plaintiff was paid to perform. See Flora, 776 F.3d at 180 (applying Lane "ordinary responsibilities" test by considering whether the plaintiff's speech was "part of the work he was paid to perform on an ordinary basis"). Plaintiff even acknowledged at her deposition that her responsibilities as a Lead Clinician included reporting suspected child abuse. (Pl.'s Dep. at 25:4-13, 27:7-11.) Therefore, the court finds that plaintiff did not speak as a citizen when engaging in the claimed protected activities. See Eugenio v. Walder, 2009 WL 1904526, at *8 (S.D.N.Y. July 2, 2009) (mandatory reporters under child abuse law were not speaking as private citizens in making reports of suspected child abuse).

The court need not address the final two prongs of the Garcetti test, whether the report involved a matter of public concern, and whether defendants had "an adequate justification for treating the employee differently from any other member of the general public." See Santiago, 687 F. App'x at 152 (noting that because the plaintiff was not speaking as a citizen when she made the speech the court did not need to address the other two prongs of the Garcetti

2018) (holding that public employee plaintiff's deposition testimony was not protected by the First Amendment because plaintiff was required to take the speech "up chain of command" by reporting it to her superior).

test in order to hold that the speech was not protected activity under the First Amendment).  See

also Caplin, 2018 WL 2215971, at *8 (M.D. Pa. May 15, 2018) (declining to discuss Pickering

balancing test because speech at issue was not protected speech).

### 3.      Plaintiff's Removal from Steel

In any event, it bears noting that even if plaintiff had presented a viable First

Amendment claim, plaintiff has not presented sufficient evidence to overcome the motions for

summary judgment.

Plaintiff contends that her report to ChildLine was the motivating factor for her

removal from Steel and that temporal proximity, without more, can create an inference of

causation if the timing is unusually suggestive.  See Doc. 86 at 13-14 (citing Abdul-Latif v. Cty.

of Lancaster, 990 F. Supp. 2d 517, 531 (E.D. Pa. 2014)).[16]  Plaintiff argues that the period

between when Mr. Dennis learned on October 7, 2015 that it was plaintiff who made the

ChildLine report and when she was told on October 15, 2015 not to report to Steel is unduly

suggestive.  Id. at 14.  Plaintiff further avers that she has produced direct evidence that her

speech was the motivating factor for her termination.  Id.

As noted supra, if a plaintiff demonstrates she engaged in constitutionally

protected conduct, the defendant retaliated, and a causal link existed between the constitutionally

protected conduct and the retaliatory action, the government nonetheless may avoid liability if it

can show by a preponderance of the evidence that it would have taken the adverse action even in

the absence of the protected conduct.  See Baloga, 927 F.3d at 752.  "In view of the standard at

---

[16]      A plaintiff can establish "the requisite causal connection by showing either: '(1) an
unusually suggestive temporal proximity between the protected activity and the allegedly
retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'"
Baloga, 927 F.3d at 759 (citing Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d
Cir. 2007)).

summary judgment, that means that an employer, to prevail on causation, 'must present evidence of such quality that no reasonable juror could conclude that the protected activity was the but-for cause of the termination.'" Id. at 759 (citing Hill v. City of Scranton, 411 F.3d 118, 126 n.11 (3d Cir. 2005)).

      Here, even assuming arguendo that plaintiff has made out a prima facie case of First Amendment retaliation, defendants have met their burden of showing that plaintiff would have been removed from Steel in the absence of the report to ChildLine. The evidence demonstrates that plaintiff acknowledged at her deposition that her paperwork contained errors and that she had difficulty managing her caseload while at Steel. (Pl.'s Dep. at 49:1-10, 50:12-51:16.) Indeed, plaintiff sent an email to Ms. Wacyk dated October 13, 2015, in which she requested a meeting to discuss the difficulty she was having completing her required paperwork in a timely manner. (Pl.'s Dep. at 39:7-40:17.) On or around October 14, 2015, Ms. Stark became convinced that the deficiencies in plaintiff's work required that plaintiff be removed from her assignment at Steel. See Stark Decl. at ¶¶ 17-19; Doc. 77, Exh. 4 (Stark October 14, 2015 Email); Doc. 78, Exh. H (Stark 2016 Letter). The October 14, 2015 email from Ms. Stark to Ms. Wacyk indicates that she reviewed plaintiff's SALs and that "[t]here are a slew of mistakes. Her sales dates and time do not match her notes and even has the wrong children. She has misspelled one child's last name on the sales. . . . Her tracking sheet is a mess with cross outs. She does not have all the notes for time billed. She did not sign and date a sal. I did not have time to go over the sals with her on Friday, . . . . My plan was to go over it this morning with her and she dropped everything and ran. I have not uploaded the sals for her because their [sic] are too many problems. I am convinced now that she is not right for this job." (Doc. 77, Exh. 4.) In order to receive funds, Interact submitted detailed progress notes and timesheets,

completed by its clinicians, reflecting the services it provided. (Stark Decl. at ¶ 6.) Thus, the deficiencies in plaintiff's performance impacted Interact's ability to receive funding. Id. at ¶¶ 7, 8, 19. No reasonable juror could conclude based on this evidence that the call to ChildLine was the but-for cause of plaintiff's removal from Steel. See Moffitt v. Tunkhannock Area Sch. Dist., 160 F. Supp. 3d 786, 799 (M.D. Pa. 2016) (granting defense motion for summary judgment because the defendant satisfied burden of showing that it would have taken the same action even in the absence of the protected conduct and the plaintiff failed to adduce sufficient evidence to permit a fact finder to draw the inference that the defendants impermissibly targeted him for exercising his free speech).

Furthermore, despite her protestations otherwise, the evidence does not support plaintiff's claim that the proffered explanation for plaintiff's removal from Steel was false and that retaliation was the real reason for the adverse employment action. Indeed, the evidence does not support plaintiff's theory that her report to ChildLine was perceived in a negative light by decision makers at Steel, resulting in her removal from Steel. For example, Ms. Stark encouraged the report to ChildLine, leaving a voicemail for plaintiff on October 6, 2015, advising plaintiff of the required reporting procedures. (Pl.'s Dep. at 123:15-126:11.) This voicemail message also reveals that Ms. Stark praised plaintiff's handling of the situation with the student. She stated, "one of the things that I thought about today was how amazing it is that this little boy trusted you so fast. And, you know, I think that just shows, you know, that you were able to fill a level of attachment with him and were willing to tune into him, you know, and what he needed to say. So I think that's awesome." (Pl.'s Dep. at 125:19-126:4.) Additionally, contrary to plaintiff's assertion that the second voicemail Ms. Stark left for plaintiff on October 9, 2015 evidences some conspiracy to remove plaintiff from Steel, this voicemail merely seeks

more information from plaintiff.  In fact, the voicemail casts the guidance counselor's behavior in a negative light.  In the voicemail message, Ms. Stark indicated that she was to meet with Mr. Dennis and stated in part, "I also wanted to clarify with you what the guidance counselor told you about [the student] and kind of dropped it in your lap and walked away.  I just want to clarify exactly what she said to you so that I'm not misrepresenting it."  (Pl.'s Dep. at 72:5-11.) Thus, the evidence relied upon by plaintiff in support of her claims does not demonstrate that plaintiff was subject to an adverse employment decision as a result of the ChildLine report, even though she included the information that the guidance counselor had not yet contacted ChildLine.[17]

    Plaintiff's entire case is based upon the theory that defendants removed plaintiff from Steel after the ChildLine report because they "were motivated by their interest in maintaining the client relationship."  See, e.g., Doc. 86 at 8.  However, plaintiff offers only unsupported evidence as the basis for this contention.  Plaintiff first points to her deposition testimony wherein she related that she went to the Staffing Plus offices on August 31, 2016, and spoke with "Colleen" and "her supervisor" who informed plaintiff of the reason that she was removed from Steel.  See id. at 8.  A review of the deposition transcript reveals that plaintiff stated at her deposition:

> Basically they let me know that – I am just trying to think.  She just let me basically know that I was no longer going to be employed with them, because it was official that day, no longer going to be employed with them because I messed

---

[17]   Plaintiff also alleges that after she made the report of suspected abuse and notified Mr. Dennis, Mr. Dennis acted "distant" and "nasty" toward her, and that they did not speak again. (Pl.'s Dep. at 55:9-12, 63:12-1, 239:7-10, 252:16-253:4.)  However, the court notes that plaintiff worked at Steel for no more than three days after reporting to Mr. Dennis that she had filed a ChildLine report.  (Pl.'s Dep. at 239:11-20.)  That is, plaintiff testified at her deposition that she contacted ChildLine on October 6, spoke with Mr. Dennis at Steel on October 7, worked at Steel on October 8 and 9, but did not return to Steel after October 9, 2015.

up a contract.  And you think we're going to allow you to mess up another contract?  Basically you are making me lose money, or you made me lose money.

(Pl.'s Dep. at 185:12-21.)

In addition, plaintiff contends that on two occasions, employees of Staffing Plus admitted to plaintiff that plaintiff was removed from Steel because of the ChildLine report. (Doc. 84 at 17.)  Plaintiff contends that on October 15 or 16, 2015, Ms. Clark told plaintiff over the phone not to return to Steel because of the "phone call."  Id.  In addition, plaintiff claims that she spoke to Ms. Call, the Staffing Plus employee whose title was Senior Compliance Representative, regarding plaintiff's certifications and clearances in January 2016 and was told that plaintiff was removed from Steel because of the phone call.  Id.

Plaintiff's deposition testimony makes clear that the basis of plaintiff's evidence is pure speculation.  The following exchange occurred at plaintiff's deposition regarding phone call with Ms. Clark in October 2015:

| | |
|---|---|
| Counsel: | So you described everything you remember about a conversation with Alison [Clark] on October 15th or October 16th? |
| Plaintiff: | Yeah.  And I believe it's at that time that she said don't go there.  And I said – probably the conversation went, why?  Something about – she basically didn't give me any information.  But I believe it was something in that – |
| Counsel: | I'm not asking what you believe.  I'm asking you what was actually said. |
| Plaintiff: | A phone call – that I made a phone call that I shouldn't have made.  I don't know what that means.  I still don't know until today.  And I'm assuming it. |

(Pl.'s Dep. at 171:11-172:1.)  Plaintiff further testified, "[s]o to me, the phone call -- she didn't come and say, okay, you called ChildLine.  But she said it was surrounding the phone call and don't go back there."  (Pl.'s Dep at 172:6-172:10.)  With respect to the telephone conversation with Ms. Call, plaintiff testified that in January 2016, she "just contacted the lady – now that I know her name is Kate.  I contacted her and asked her to send me my credentials.  Because at

that point, I was just frustrated and needing to move on.  And that's when I had been told

everything was about a phone call that I had made, and that's why I was no longer . . . ."  (Pl.'s

Dep. at 170:8-171:5.)  At her deposition, plaintiff was asked to clarify her testimony several

times but failed to do so, leaving her conclusions unsupported and based on pure conjecture.

Likewise, the unsupported affidavit dated September 6, 2019, that plaintiff appended to her

responses to the summary judgment motion offers no support for her claims.  <u>See</u> Doc. 84 at

Exh. D and Doc. 86 at Exh. D.  In the affidavit, plaintiff alleges that other similarly situated Lead

Clinicians contracted with Interact ("Maryum," Jonathan Miller, and "Martin C") were not

reprimanded or terminated for the same behavior as plaintiff.  Such unsupported evidence simply

does not lend credence to plaintiff's theory.

        "The court need not accept mere conclusory allegations, whether they are made in

the complaint or a sworn statement."  <u>Bakhtiari v. Madrigal</u>, 2019 WL 2084445, at *4 (M.D. Pa.

May 13, 2019) (citing <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990)).  <u>See also</u>

<u>Kaszuba v. Borough of Dickson City</u>, 779 F. App'x 980, 984 (3d Cir. 2019) (not precedential)

(affirming district court's determination to discount the deposition testimony of four witnesses

because "all four witnesses failed to 'cite to specific evidence' and, by their own admission, were

expressing merely 'opinions and beliefs'"); <u>Ocasio v. Lehigh Valley Family Health Ctr.</u>, 368 F.

Supp. 2d 370, 379 (E.D. Pa. 2003) ("Ocasio's mere belief that she is a retaliation victim is

insufficient to thwart summary judgment."), <u>aff'd</u>, 92 F. App'x 876 (3d Cir. 2004).  Additionally,

the Third Circuit has noted that "[t]he line between reasonable inferences and impermissible

speculation is often thin, but nevertheless is critical because an inference based upon a

speculation or conjecture does not create a material factual dispute sufficient to defeat summary

judgment."  <u>Halsey v. Pfeiffer</u>, 750 F.3d 273, 287 (3d Cir. 2014) (internal citations and

quotations omitted).  Moreover, "[s]peculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." Lexington Ins. Co. v. W. Pennsylvania Hosp., 423 F.3d 318, 333 (3d Cir. 2005) (quoting Hedberg v. Indiana Bell Tel. Co., Inc., 47 F.3d 928, 932 (7th Cir. 1995)).  The evidence presented by plaintiff consists of conclusory allegations and speculation.

Because plaintiff has failed to present evidence sufficient to establish a claim based on First Amendment retaliation, the court will grant defendants' motions for summary judgment on Count I of plaintiff's Second Amended Complaint.

**B.     Count II – Wrongful Termination under Pennsylvania Law**

In Count II of the Second Amended Complaint, plaintiff presents a Pennsylvania state law claim based on wrongful termination.[18]  (Doc. 33.)  As noted supra, only defendants Staffing Plus and Interact remain on this claim.[19]

Pennsylvania does not recognize a common law action for wrongful termination of at-will employment.  See Weaver v. Harpster, 975 A.2d 555, 562 (Pa. 2009).  "An employee may bring a cause of action for termination only in the most limited circumstances, namely

---

[18]     The only federal claim over which the court has original jurisdiction is plaintiff's First Amendment retaliation claim; however, the court will grant summary judgment on this claim because defendants have demonstrated that there is no genuine issue as to any material fact related to the claim and they are entitled to judgment as a matter of law.  Plaintiff's remaining claim -- wrongful termination -- arises under Pennsylvania law.  Under the doctrine of pendent jurisdiction, if the only federal claims in a suit are dismissed before trial, the court should dismiss the state claims unless judicial economy, convenience, and fairness to litigants weigh in favor of retaining jurisdiction over those claims.  See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000).  Given the late stage of this litigation and the dearth of evidence supporting plaintiff's claims, the court will address plaintiff's remaining state law claim on the merits.

[19]     The motion to dismiss was granted on this claim against Ms. Clark.  See Parker, 346 F. Supp. 3d at 745 n.2.  In addition, plaintiff voluntarily withdrew the wrongful termination claim against Ms. Stark and Ms. Wacyk.  See Doc. 86 at 22.

'where the termination violates a clear mandate of public policy.'" <u>Heidorn v. Church</u>, 2016 WL 4651382, at *2 (Pa. Super. Ct. June 22, 2016).

In their motion to dismiss, the Staffing Plus Defendants argued that Pennsylvania law does not permit wrongful termination claims by independent contractors such as plaintiff, and that plaintiff had not set forth a cognizable violation of public policy as the basis of her wrongful termination claim. <u>Parker</u>, 346 F. Supp. 3d at 751-52. In deciding the motion to dismiss, Judge DuBois determined, however, that plaintiff, an independent contractor, may bring a wrongful termination claim on the ground that her termination violated public policy. <u>Id.</u> at 752. The court noted that termination based on compliance with Pennsylvania's Child Protective Services Law falls squarely within the public policy exceptions under Pennsylvania law. <u>Id.</u> (citing <u>Krolczyk v. Goddard Systems, Inc.</u>, 164 A.3d 521, 528 (Pa. Super. Ct. 2017)).

In its motion for summary judgment, Staffing Plus again contends that a claim for wrongful termination may not be maintained by an independent contractor. (Doc. 79 at 10.) Staffing Plus further argues that even if an independent contractor could bring a claim for wrongful termination, pursuant to the Pennsylvania Supreme Court's decision in <u>Clay v. Advanced Computer Applications, Inc.</u>, 559 A.2d 917, 918 (Pa. 1989), such a plaintiff could not maintain a common law wrongful discharge claim where there is a specific statute that provides a cause of action related to the matter, such as section 6320 of Pennsylvania's Child Protective Services Law.[20] <u>Id.</u>

In contrast, plaintiff relies on <u>Krolczyk</u>, 164 A.3d 521, in support of her argument that the Pennsylvania Superior Court recognized a wrongful discharge claim for retaliation for making a child abuse report. <u>See</u> Doc. 84 at 16. In <u>Krolczyk</u>, the Superior Court considered an

---

[20] Section 6320 of Pennsylvania's Child Protective Services Law provides a cause of action based on retaliation for reporting child abuse. <u>See</u> 23 Pa. Cons. Stat. Ann. § 6320.

appeal from the grant of summary judgment and determined that the plaintiffs had stated a claim for wrongful discharge because the plaintiffs alleged that the reason for their discharge was that they, as mandated reporters, had notified the school that they were going to file a report of a suspicion of abuse with the Department of Public Welfare. Krolczyk, 164 A.3d at 528-29. The Superior Court further determined that the plaintiffs "have a viable cause of action for wrongful discharge based upon public policy, and they presented sufficient evidence that their discharge was based upon the implicated public policy." Id. at 529.

Staffing Plus counters that this court is not bound by the holding of Krolczyk, because the Superior Court in Krolczyk "does not purport to address the issue of the interaction of wrongful discharge claims and statutory remedies." See Doc. 89 at 6. Staffing Plus urges the court to conclude that the Superior Court decision in Krolczyk does not overrule or affect the clear command of the Pennsylvania Supreme Court in Clay. Id. at 7. Plaintiff offers no specific counter to Staffing Plus' argument, other than to contend that the Pennsylvania Superior Court has recognized a cause of action for wrongful termination in violation of the public policy interest in preventing child abuse. It appears that the issue presented by Staffing Plus was not presented to the Superior Court in Krolczyk and, thus, was not considered or addressed by that court. The undersigned finds the argument of Staffing Plus to be persuasive. See LaRochelle v. Wilmac Corp., 210 F. Supp. 3d 658, 713-14 (E.D. Pa. 2016) (granting summary judgment on common law wrongful discharge claim because plaintiffs had an available statutory remedy, a private right of action under Pennsylvania's Older Adults Protective Services Act, 35 Pa. Cons. Stat. Ann. § 10225.101 et seq.); Marchionni v. Septa, 2000 WL 124564, at *2 (E.D. Pa. Feb. 2, 2000) ("Pennsylvania recognizes a cause of action for wrongful discharge 'only in the absence of a statutory remedy and only when important and well recognized facets of public policy are at

stake.'"); Freeman v. McKellar, 795 F. Supp. 733, (E.D. Pa. 1992) (dismissing state law wrongful discharge claim because "[a] cause of action for wrongful discharge . . . may be maintained only in the absence of a statutory remedy for an aggrieved employee" and the plaintiff had "an appropriate statutory remedy under the Whistleblower Act"). See also Ortiz v. Priority Healthcare Grp. LLC, 2019 WL 3240016, at *6 (M.D. Pa. July 18, 2019) (noting that the "existence of the statutory remedy, rather than the claimant's successful application of it, determines whether preemption applies" and that the "purpose of this limitation is to prevent a claimant from circumventing the specific procedures defined in the pertinent statute") (internal citations and quotations omitted).

Nevertheless, even if plaintiff can pursue her common law wrongful discharge claim under the facts of this case, plaintiff's claim would fail for other reasons. It appears that the state law claim for wrongful discharge would be considered under the federal McDonnell Douglas framework established for retaliation claims under Title VII. See Frymoyer v. E. Penn Mfg. Co., Inc., 757 F. App'x 97, 100-01 (3d Cir. 2018) (not precedential) (affirming grant of summary judgment in favor of employer on plaintiff's claims of wrongful termination under federal Rehabilitation Act and wrongful termination under Pennsylvania law and applying McDonnell Douglas burden shifting analysis). See also Steele v. Pelmor Lab., Inc., 2017 WL 5515919, at *6 (E.D. Pa. Apr. 18, 2017) (noting that Pennsylvania recognizes a common law cause of action for wrongful discharge of an employee who filed a claim for workers' compensation and applying McDonnell Douglas framework because the elements of the state law claim have not been established by the Pennsylvania Supreme Court); LaRochelle, 210 F. Supp. 3d at 714 (utilizing Title VII retaliation framework to analyze state law claim for wrongful discharge for filing of workers' compensation claim); Christman v. Cigas Machine Shop, Inc.,

293 F. Supp. 2d 538, 543 (E.D. Pa. 2003) ("The Pennsylvania Supreme Court has not yet set forth the elements of a <u>prima facie</u> case of retaliatory discharge, so courts in this district borrow the analytical structure used in Title VII retaliation claims."). That is, plaintiff must first make a <u>prima facie</u> showing of wrongful termination. <u>Frymoyer</u>, 757 F. App'x at 100. The burden of production then shifts to defendants to proffer a legitimate reason for the termination. <u>Id.</u> The burden then shifts back to plaintiff to show that defendants' explanation is pretextual. <u>Id.</u> In this case then, plaintiff "must offer sufficient evidence for a juror to find [defendants'] proffered 'reason was a fabrication . . . or . . . to infer that [the filing of the ChildLine report] . . . was more likely that not a motivating or determinative cause of the adverse employment action.'" <u>See</u> <u>id.</u> at 100-01 (citing <u>Wishkin v. Potter</u>, 476 F.3d 180, 185 (3d Cir. 2007)). Utilizing the <u>McDonnell Douglas</u> analytical framework, plaintiff's wrongful termination claim also would fail.

### 1. Interact

In support of her argument that she was wrongly discharged, plaintiff again presents the arguments presented in connection with the First Amendment retaliation claim. That is, plaintiff alleges that Mr. Dennis "was motivated to discredit Plaintiff in order to protect his guidance counselor" and that "Co-Defendants and Moving Defendants were motivated by their interest in maintaining the client relationship." <u>See</u> Doc. 86 at 16-19.[21]

Defendant Interact contends that the evidence does not support plaintiff's claim that she was discharged because she complied with her statutory duty. (Doc. 77 at 3-4, 6, 9-11; Doc. 88 at 5-7.) Additionally, Interact avers that plaintiff was not discharged for her report to

---

[21]     Plaintiff again references the same allegations as she did in the First Amendment retaliation claim to support her contention that she was wrongfully terminated. <u>See</u> Doc. 86 at 17-18. As discussed <u>supra</u>, plaintiff's evidence is speculative and does not support her contention that she was viewed in a negative light because she filed the ChildLine report.

ChildLine, but rather for issues involving her paperwork and time management skills. Id. Interact has proffered a legitimate reason for the termination and this reason is supported by the evidence of record, including, plaintiff's deposition testimony acknowledging that her paperwork contained errors and that she had difficulty managing her caseload while at Steel, see Pl.'s Dep. at 49:1-10, 50:12-51:16, the email plaintiff sent to Ms. Wacyk dated October 13, 2015 requesting a meeting to discuss the difficulty she was having completing her required paperwork in a timely manner, see Pl.'s Dep. at 39:7-40:17, and the October 14, 2015 email from Ms. Stark to Ms. Wacyk indicating that plaintiff's SALs were filled with mistakes, see Doc. 77, Exh. 4.

Plaintiff claims that the alleged reasons for plaintiff's removal from Steel were pretextual as other similarly situated Lead Clinicians regularly presented the same deficiencies in work but suffered no adverse employment decisions. See Doc. 86 at 16-19. In support of this argument, plaintiff attached a September 6, 2019 affidavit to her responses to the motions for summary judgment, see, e.g., Doc. 86, Exh. D.[22] In the affidavit, plaintiff claims that the other Lead Clinician assigned to Steel while plaintiff worked there, "Maryum," also turned her reports in late, made mistakes in the reports, and failed to provide the assigned students with the properly allotted time. Id. Plaintiff claims that Maryum was not subject to any adverse employment action. Id. Plaintiff further claims that other Lead Clinicians, Jonathan Miller and "Martin C", made similar errors but also were not subject to any adverse employment actions. Id. However, plaintiff's affidavit does not sufficiently rebut the evidence presented by defendants.

---

[22] Interact contends that the September 6, 2019 affidavit should be disregarded pursuant to the sham affidavit doctrine because plaintiff raises the "pretext" argument for the first time. See Doc. 88 at 5-7. Plaintiff counters that the September 6, 2019 affidavit is consistent with her deposition testimony. See Doc. 93 at 1-2.

Plaintiff has not provided any evidence to support her claims but has solely relied upon speculation and her own conclusory allegations. Such conclusory allegations simply cannot conjure up a genuine dispute of material fact for plaintiff to survive summary judgment. As the Honorable Timothy J. Savage recently noted:

> "'[C]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.'" Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009) (quoting Blair v. Scott Specialty Gases, 283 F.3d 595, 608 (3d Cir. 2002)). See also Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990) ("The object of [Rule 56] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."). Instead, the affiant must set forth specific facts that reveal a genuine issue of material fact. Id. (collecting cases). Because they are not subject to cross-examination, affidavits are scrutinized carefully. In re CitX Corp., 448 F.3d 672, 680 (3d Cir. 2006) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 2722, at 373, 379 (3d ed. 1998)).

Mahalik v. Cantania, 2019 WL 5862170, at *3 (E.D. Pa. Nov. 7, 2019). See Berrada v. Cohen, 2019 WL 5618181, at *2 (3d Cir. Oct. 31, 2019) (not precedential) (affirming grant of summary judgment where plaintiff offered no corroboration for his testimony and where plaintiff's testimony was contradicted by indisputable evidence).[23] See also Terrell v. Main Line Health, Inc., 320 F. Supp. 3d 644, 661 (E.D. Pa. 2018) ("Plaintiff's self-serving allegations of disparate treatment are insufficient to raise a genuine issue of material fact on the issue of pretext.").

---

[23] In Berrada, the Third Circuit noted:
"Although [a non-movant] is entitled to the benefit of all reasonable factual inferences at this stage, [he] must nevertheless point to some evidence in the record to support [his] factual assertions." Gillispie v. RegionalCare Hosp. Partners Inc., 892 F.3d 585, 594 (3d Cir. 2018), petition for cert. docketed No. 18-1299 (Dec. 29, 2018). "As a general proposition, conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." Gonzalez v. Sec'y of Dep't of Homeland Sec., 678 F.3d 254, 263 (3d Cir. 2012) (internal quotation marks and citation omitted). If testimony is "blatantly contradicted by the record," then "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L.Ed.2d 686 (2007).
2019 WL 5618181, at *2 (alterations in original).

Here, plaintiff has not proffered sufficient evidence to rebut defendants' legitimate reason for removing plaintiff from Steel.  See Frymoyer, 757 F. App'x at 101-02 (affirming grant of motion for summary judgment because plaintiff has not proffered sufficient evidence to rebut employer's legitimate reason for his termination); Capps v. Mondelez Glob., LLC, 847 F.3d 144, 152-55 (3d Cir. 2017) (affirming district court's grant of summary judgment because plaintiff had not adduced any meaningful evidence that would allow a reasonable factfinder to find pretext).  No reasonable jury could find based on the evidence before the court that Interact directed plaintiff's removal from Steel because she reported suspected child abuse to ChildLine.

### 2.    Staffing Plus

In its motion for summary judgment, defendant Staffing Plus argued in the alternative that even if plaintiff can maintain a state law wrongful discharge claim, plaintiff adduced no evidence that defendants acted in concert to remove plaintiff from Steel due to the ChildLine report.  (Doc. 79 at 11.)  Once again, plaintiff alleges that Mr. Dennis "was motivated to discredit Plaintiff in order to protect his guidance counselor" and that "Co-Defendants and Moving Defendants were motivated by their interest in maintaining the client relationship." (Doc. 84 at 15-17.)  Plaintiff reiterates that two Staffing Plus employees informed her that she was removed from Steel due to the "phone call."  Id.

As discussed at length supra, the conversations that plaintiff relies upon in support of her contention that Staffing Plus advised plaintiff that she should not return to Steel because of the phone call are too speculative for purposes of surviving a motion for summary judgment.  At her deposition, plaintiff stated that she assumed that Ms. Clark was referring to the ChildLine call when they spoke in October 2015, but acknowledged that Ms. Clark did not explicitly

reference the ChildLine call. (Pl.'s Dep. at 171:11-173:5.) Plaintiff did not even recall if she again spoke with Ms. Clark after that time. (Pl.'s Dep. at 173:17-174:1.) In addition, the deposition testimony regarding the telephone conversation with Ms. Call, upon which plaintiff also relies as a basis for her claim, is similarly vague. See Pl.'s Dep. at 170:8-171:5.[24]

For the foregoing reasons, summary judgment is appropriate on plaintiff's Count II claim against defendants Interact and Staffing Plus.

### C. Judicial Estoppel

On or about January 28, 2019, plaintiff filed a voluntary petition for bankruptcy. See, e.g., Doc. 83, Exh. A. On or about February 22, 2019, plaintiff, by and through her bankruptcy attorney, with the assistance of his paralegal, filed several documents in the bankruptcy proceedings, including a Schedule A/B: Property. See Doc. 83, Exh. B. The Schedule A/B: Property, did not disclose the instant matter therein. Id.

The Staffing Plus Defendants filed a separate motion for summary judgment, contending that, pursuant to the doctrine of judicial estoppel, plaintiff should not be permitted to pursue her claims in the instant matter. (Doc. 80.) The Interact Defendants also raise this issue in their motion for summary judgment. (Doc. 77 at 11-13.) The Staffing Plus Defendants and the Interact Defendants assert that: (1) plaintiff was required to disclose her alleged causes of action in her bankruptcy petition, and (2) plaintiff should be judicially estopped from pursuing

---

[24] Furthermore, it bears repeating that plaintiff has not presented evidence demonstrating what role, if any, Staffing Plus played in the decision to remove plaintiff from Steel. Plaintiff points to Mr. Dennis' alleged statement to plaintiff that she was "done" and the meeting that occurred afterward with Mr. Dennis and Ms. Stark. But if even if the statement "ok you are done" was uttered by Mr. Dennis and a meeting followed with Ms. Stark, it is unclear how this implicates Staffing Plus. Ms. Clark did not maintain a physical office at Steel, did not supervise plaintiff, and did not participate in the determination to remove plaintiff from Steel. Rather, Ms. Stark, a non-Staffing employee, was present at Steel, supervised plaintiff, and took responsibility for removing plaintiff from Steel. See Stark Decl. at ¶¶ 1, 2, 18-20.

her claims against defendants because she failed to disclose them during her bankruptcy proceeding.

Judicial estoppel is a judge-made "doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996); see also In re Kane, 628 F.3d 631, 638 (3d Cir. 2011) ("[J]udicial estoppel is a fact-specific, equitable doctrine, applied at a court's discretion."). It is "an extreme remedy, to be used only when the inconsistent positions are tantamount to a knowing misrepresentation to or even fraud on the court." Chao v. Roy's Constr., Inc., 517 F.3d 180, 186 n.5 (3d Cir. 2008). The doctrine is applicable when three elements are met: (1) the party to be estopped must have taken irreconcilably inconsistent positions, (2) the party to be estopped acted in bad faith, and (3) the remedy is tailored to address the harm. G-I Holdings, Inc. v. Reliance Ins. Co., 586 F.3d 247, 262 (3d Cir. 2009); Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314, 319-20 (3d Cir. 2003) (same), cert. denied, 541 U.S. 1043 (2004).

Because the court will grant the defense motions for summary judgment for the reasons stated herein, the Staffing Plus motion for summary judgment on the basis of judicial estoppel (Doc. 80), will be denied as moot.[25]

---

[25]    In any event, the court notes that after the Staffing Plus Defendants filed the motion for summary judgment raising plaintiff's failure to disclose the instant action in her bankruptcy proceeding, plaintiff, by and through her bankruptcy counsel, filed an Amended Schedule A/B: Property on July 30, 2019. See Doc. 83, Exh. C. In the Amended Schedule A/B: Property, plaintiff appropriately disclosed this instant action. Id. Plaintiff has presented to the court a letter from the bankruptcy paralegal that reflects that the omission from the first property schedule was a mistake and was not done in bad faith. See Doc. 83, Exh. D. There is no evidence that plaintiff acted in bad faith in failing to disclose the current lawsuit on the schedule of property attached to plaintiff's bankruptcy filing.

## V.    CONCLUSION

The undisputed evidence of record, viewed in a light most favorable to plaintiff and resolving all inferences in her favor, demonstrates that plaintiff spoke as a public employee when she made a suspicion of abuse report to ChildLine.  As such, the First Amendment does not protect the speech at issue.  Even if the speech at issue is protected speech, plaintiff has failed to present sufficient evidence to establish a First Amendment retaliation claim.  Accordingly, the court will grant summary judgment in favor of all defendants and against plaintiff on her First Amendment claim.  Additionally, plaintiff has failed to proffer sufficient evidence to establish a claim for wrongful termination under Pennsylvania law and summary judgment will be granted in favor of defendants Interact and Staffing Plus on this claim as well.

For all the above reasons, it is hereby **ORDERED** that the motions for summary judgment filed by defendants Interact, Ms. Stark, and Ms. Wacyk (Doc. 77), defendants SDP and Mr. Dennis (Doc. 78), and defendants Staffing Plus and Ms. Clark (Doc. 79), are **GRANTED**.

The motion for summary judgment filed by defendants Staffing Plus and Ms. Clark on the basis of judicial estoppel (Doc. 80), is **DENIED AS MOOT**.

A separate Judgement Order will be entered.

BY THE COURT:


_/s/ Thomas J. Rueter_____
THOMAS J. RUETER
United States Magistrate Judge